BRADSHAW, Respondent, v. AMERICAN BENEVO-
LENT ASSOCIATION, Appellant.

St. Louis Court of Appeals, May 2, 1905.

1. **INSURANCE: Sick Benefits.** In an action on an insurance
policy allowing indemnity to the insured for time lost by rea-
son of sickness by which he should be "wholly incapacitated
from transacting any and every kind of business" and be "en-
tirely and continuously confined in bed" and under the charge
of the physician, where the evidence showed that the plaintiff
was rendered, by his illness, incapable of any kind of business
and was under the charge of the physician, but was in bed only
a small portion of the time and took trips to distant points on
the advice of his physician, he was not entitled to recover.

Appeal from Laclede Circuit Court.—*Hon. L. B. Wood-
side,* Judge.

REVERSED.

*Edwin S. Puller* for appellant.

(1) Plaintiff testified that he was only occasion-
ally confined to bed and that he was not necessarily and
continuously confined to bed during the time for which
he claims benefits; that he was not physically, but was
mentally impaired and never totally disabled physically.
Mental impairment is insanity and benefits therefor are
excluded under paragraph three on the back page of the
policy, either where the disability results directly or in-
directly from insanity or happening while the plaintiff
is insane. He was insured as "an editor, office duties
only." Manual labor was not a part of his occupation.
The court's declaration of law was therefore error.
Plaintiff was not (under any reasonable interpretation
of the evidence) "wholly incapacitated from transact-
ing any and every kind of business." His disability was
only partial. Lyon v. Assurance Co., 46 Ia. 631; Ins.
Co. v. Gray (Ala., S. C.), 26 S. W. 517; McKinley v. Ins.

Co., 106 Ia. 81; Maccabees v. King, 79 Ill. App. 145; Acc. Ass'n v. Millard, 43 Ill. App. 148, citing Knapp v. Preferred Ass'n, 24 N. Y. St. Rep. 882. (2) Plaintiff was not necessarily and continuously confined to bed. Gainor v. Life Assn. (N. Y. S. C. App. Term), 46 N. Y. Supp. 965.

*J. W. Farris* for respondent.

The suit was founded upon a policy for a sick benefit. The plaintiff paid a fixed amount of premium to the association in consideration that in case of sickness the association would pay him certain weekly benefits. The terms of the certificate, if these benefits will only be paid, provided the claimant is confined to his bed all the time claimed for, are unreasonable and illegal, if by such confinement to bed the claimant would thereby injure his health, or endanger life. Such were the conditions in this case. The claimant was advised by his physician to take outdoor exercise and fresh air, as a part of his treatment. A contract which would bind a person to pursue a policy, and pay for it, that would destroy health or endanger life, is against public policy, and will not be upheld by the courts. Barnett v. Sweringen, 77 Mo. App. 64; Ins. Co. v. Railroad, 74 Mo. App. 89. Courts will construe contracts, 176 Mo. 580.

GOODE, J.—This is an action on a certificate of insurance, one of the "benevolent" variety. It was issued to the plaintiff November 16, 1900. Plaintiff was an editor of a newspaper doing office duty only, and was insured in that capacity. The certificate promised insurance for total disability due to accidental violence at the rate of $25 a week; $600 indemnity for the loss of two limbs or both eyes and $300 indemnity for the loss of one limb or one eye, and the following indemnities for illness:

"After membership for ninety days without delin-

quency immediately prior to the beginning of sickness, should the member, by reason of sickness or disease, be wholly incapacitated from transacting any and every kind of work or business, and as a result thereof be entirely and continuously confined in bed and under the charge and subject to the personal calls of some regular qualified physician, the association will pay said member as hereinafter provided for a period not exceeding thirty-two weeks following the first week's sickness so confined, as follows:

Weekly Sick ........ 1st eight weeks, $9.00 per week
Indemnity .......... 2nd eight weeks, $9.00 per week
After First ......... 3rd eight weeks, $10.00 per week.
Week ............4th eighth weeks, $12.00 per week."

There is a death indemnity too. This action is to recover indemnity for illness during seventeen weeks between April and September, 1903. The contention is that during that time the plaintiff was wholly incapacitated by sickness and disease to perform any kind of business or work. The allegations of the petition are imperfect, but we need not concern ourselves with them for the proof fails to establish a cause of action.

Plaintiff had a nervous breakdown or attack of neurasthenia, extending over six months, and culminating in June, 1903. He was under the attention of a physician throughout his sickness, and, we think, was wholly incapacitated to attend to any business. He was never, even when at his worst, confined to the bed. It is true he rested occasionally in bed during the daytime, but spent most of the hours of the day out of doors. In this he acted under the advice of his physician who thought it was better for him to be in the open air than in the house. Plaintiff testified that during the month of June, when he was worse than at any other time, he went to St. Louis to consult Dr. Fry, and in May took a trip to Texas and remained ten days to be away from his business. He swore he was never confined to his bed constantly, but sometimes stayed in bed two or three

days out of a week. It will be observed that one of the conditions on which plaintiff would become entitled to indemnity for sickness was that he should be wholly incapacitated to do work and as another result of the sickness be entirely and continuously confined to bed and under the personal charge of some physician. We would not, of course, hold that this clause meant that a patient must spend every minute in bed for his right to indemnity to accrue; but the manifest purpose of the policy was not to indemnify for loss of time due to sickness unless the patient was bedridden in a substantial sense. We suppose the purpose was to insure against such illness only as would keep the patient in bed and thereby diminish the danger of claims founded on feigned or exaggerated illness. Now to hold that a person who could take a trip to Texas, another to St. Louis, and who was able to be up and around when he chose, was confined to his bed, would be to ignore one clause of the policy. This class of insurance is often disappointing because persons take it without reading the conditions of the certificate. As was said in Gainor v. Lawrence Life Ass'n, 46 N. Y. Supp. 965, in construing a policy like this one, the insured did not seem to appreciate "the numerous safeguards and protections constituted by the policy for the benefit, not of the insured, but of the company, and which make any payments by it in most cases purely optional." A policy which does not provide for indemnity to the holder for time actually lost on account of illness, even though the insured is not compelled to keep his bed continuously, may be of very little value; but plaintiff accepted a contract of that character and must stand or fall by its terms, interpreted according to reason.

The judgment is, therefore, reversed. All concur.