## AARON WILKES v. NATIONAL LIFE & ACCIDENT INSURANCE CO.

Western Section. December 20, 1927.

Norville & Lyons, of Memphis, for appellant.
Ewing, King & King, of Memphis, for appellee.

SENTER, J.   The appeal in this case is from a judgment of the circuit court of Shelby county in favor of the defendant.   A motion for a new trial was duly made by the defendant and overruled by the court, and an appeal prayed and granted to this court and errors assigned.

The parties will be referred to in this opinion as in their original status in the court below.

The plaintiff, Aaron Wilkes, a young colored man, sued the defendant to recover on a policy of life insurance designated as an endowment policy, with provision for sick and accident benefits. The bill of exceptions is very brief, and is in narrative form, the

evidence of the particular witnesses introduced at the trial of the case both for plaintiff and defendant is not set out, nor do the names of the witnesses appear. The bill of exceptions simply recites that the evidence tended to show the following facts. The bill of exceptions then proceeds to detail the facts which stated the evidence tended to show. At the conclusion of the evidence for plaintiff the defendant moved the court to instruct the jury to return a verdict for the defendant, setting forth certain grounds in the motion. At this point the plaintiff moved to be permitted to amend the declaration by adding a specific charge that the plaintiff was confined to his bed in the meaning of the provision in the policy on that subject. This amendment was allowed by the court. The bill of exceptions then states: ''The court overruled the second ground of the motion, and the defendant introduced proof which tended to controvert the facts already set forth.'' The bill of exceptions does not state wherein the evidence introduced by the defendant controverted the facts as narrated in the bill of exceptions. The bill of exceptions in this form was duly signed by the trial judge and ordered to be filed and made a part of the record in this cause. Hence, we must take the facts as set forth in the bill of exceptions as having been proved by the evidence of witnesses.

The provision in the policy about which this controversy arose, and made the basis of this suit, is in the following language:

''2. Benefits will be paid for each day that the insured is by reason of illness necessarily confined to bed and for each day that the insured is by reason of accidental injury, of which there is external evidence, disabled from performing work of any nature, provided such confinement or disability is not less than four consecutive days and a certificate of a duly licensed and practicing physician is furnished as hereinafter provided. The total number of days for which benefits will be paid under this policy is limited to one hundred eighty-two (182) during any twelve consecutive months. Benefits under this clause will be paid each seven days, except when payment is for less than one week, then payment will be made at the rate of one-seventh of the weekly benefits for each day.''

The facts may be summarized as follows: The plaintiff issued the policy of insurance containing the above provision on November 6, 1922. At that time the plaintiff, a young colored man, was employed as a laborer at a hardwood lumber mill in Memphis, Tennessee, and continued in that employment until July 11, 1923. He was in good health until that time, and when he returned to his home on July 11, 1923, he suffered a stroke of some type of paralysis, and his condition was such that he was confined to his bed for several months, and during a part of the time he had some fever. To quote from the record: ''He could not use nor control his lower limbs, and he called a Dr. Johnson to attend him; that for a long period of time

he was actually confined to his bed. For a while he had some fever, and for some months he could not use his lower limbs. . . . After some three or four weeks he called in another physician, a Dr. Luster, who treated him very many times, but the inability to use his lower limbs continued and has continued without appreciable improvement up to the date of the trial, almost four years later.'' The record shows that after having been actually confined to his bed for several months his condition became such that he could, by the use of crutches, walk about the place, and made frequent trips to the hospital for treatment; that on these trips to the hospital some friend would call for him in an automobile and help him in and out of the automobile; that he made other trips to the hospital some times on street cars, and to the doctor's office, but that he was always accompanied by someone to assist him in and out of the automobile or onto and off of the street car. He could walk around about the house and yard on his crutches, and by using his crutches he could walk as far as a block or more and return without assistance. At least on one occasion he went two blocks on his crutches and returned. It also appears that he went to his mother's home in Mississippi in an automobile and stayed at her home for about a month. It does not appear whether he was in bed any part of the daytime while he was on this visit to his mother. His illness was not the result of any accident, or other excepted clauses in the policy. The bill of exceptions states that the proof tended to show that after he was able to leave the bed and up to the time of the trial of the case he was in good health and normal except for the disability to his lower limbs, which necessitated his using crutches, but did not necessitate a literal confinement to the bed. The record shows that at times when he would become tired he would lie down on the bed during the daytime, but his condition of disability did not confine him to his bed, nor did it confine him to the house all of the time.

He made several visits to the office of his attorney, but always with an attendant; that he attended the trial of the case, but that in doing so he had some friend to assist him. He made frequent visits to the office of the insurance company in Memphis to make the weekly collections for his sick benefits as long as the same were being paid to him under the policy, but in doing so it was necessary to have some one to help him.

It appears that the defendant paid the weekly benefits for two years at the rate of 182 days, or twenty-six weeks for each year, and discontinued the payments the latter part of February, 1925, after which time the defendant denied further liability under the terms of the policy. The suit was filed by the plaintiff on December 22, 1925. The plaintiff continued to pay the weekly premiums on the insurance policy.

The declaration seeks to recover not only for the weekly benefits claimed to have accrued to the filing of the suit, but alleged that because of the permanent disability of the plaintiff, and because the disability was incurable, and because he would never be able to perform any work or labor, and because of the refusal of the company to continue to pay weekly benefits, that he was entitled to recover for the period of his life expectancy on the basis of $8 per week for 182 days in each year, and until the policy matured as an endowment policy payable at the age of sixty-nine years.

As above stated at the conclusion of the plaintiff's evidence the defendant moved for a peremptory instruction on three grounds. First, because the declaration did not charge that the plaintiff was confined to his bed. Second, that the condition No. 2 of the policy prevented a recovery, as that condition required an illness which necessarily confined to bed, and the proof did not show such an illness. Third, that in the event plaintiff was entitled to recover, the recovery should be limited solely to the number of weeks accruing prior to the trial of the cause. It was at this point that counsel for plaintiff moved to be permitted to amend the declarations as hereinafter referred to so as to specifically charge confinement to the bed. The court then overruled the motion for a directed verdict on the first and second ground, but held that the third ground of the motion should be sustained, and to which action of the court in sustaining the third ground of the motion the plaintiff excepted. At the conclusion of all the evidence the defendant renewed its motion for a directed verdict on the grounds first made, and which motion was by the court sustained, and the jury directed to return a verdict in favor of the defendant, which was accordingly done, and the court thereupon dismissed the suit at the cost of plaintiff. Whereupon, plaintiff filed his motion for a new trial, which motion was overruled and disallowed by the court, and to this action of the court plaintiff prayed and was granted an appeal to this court, which appeal has been duly perfected and errors assigned.

By the first assignment of error it is said that the court erred in directing the jury to find in favor of the defendant. By the second assignment of error it is contended that the court erred in determining the facts for the reason that it was for the jury to determine the facts under a proper instruction on the law. The third assignment of error insists, that the court erred in holding, as a matter of law, that under the evidence plaintiff could not recover because of condition No. 2 of the policy. The fourth assignment of error, is directed to the action of the court in not submitting to the jury under proper instruction, whether plaintiff's condition, his illness and disability constituted a necessary confinement to bed within the legal meaning of said terms as used in the policy. The fifth assignment of error is directed to the action of the court in holding that in the

event of a recovery the plaintiff could not recover for illness and disability which would accrue subsequent to the date of trial, as the suit was an action upon the breach of the contract in which all damages reasonably within the contemplation of the parties which flowed therefrom could be recovered, and that plaintiff is entitled to recover the present value of the contract.

The first four of the assignments of error will be grouped and disposed of collectively. However, we will first consider and dispose of the fifth assignment of error. Under this assignment of error it is the insistence of plaintiff that the defendant breached the contract of insurance by refusing to continue to pay the sick benefits, and under the evidence the plaintiff is permanently and totally disabled from performing any work or labor, and that this condition will continue throughout his life without material improvement, and that he is in sound health, except the disability to his lower limbs, and is therefore entitled to recover the present value of the contract. In support of this contention plaintiff relies mainly on the notes and annotations to the case of American Ins. Union v. Woodard, 48 A. L. R., 103-121. An examination of these cases, and the notes and annotations thereto show they are on the question of a wrongful cancellation of a policy of insurance, or a wrongful forfeiture for alleged nonpayment of dues or premiums, and are not analogous to this case. While it is true that the record discloses a condition of permanent disability of the plaintiff, and that he is totally and permanently disabled from performing any labor or work, yet it is not shown that his disability for the remainder of his life would confine him to his bed in a substantial sense. The mere fact that the defendant has refused to continue to make payments of weekly benefits to the plaintiff because of his present illness, on the ground that the plaintiff is not confined to his bed so as to entitle him to a continuation of the weekly benefits, does not amount to a cancellation of the policy. We do not think this assignment of error is well taken, and it is accordingly overruled.

By the other assignments of error only two questions are presented, and these questions may be disposed of together. There is no doubt under the record but that the plaintiff has been continuously unable to perform any work or labor or his usual vocation because of the disease to his lower limbs. The policy of insurance is not one which covers total or partial disability except as the result of an accident of which there is external evidence, unless the plaintiff is necessarily confined to his bed. In all cases where there is a conflict in the evidence the questions of fact must be submitted to the jury under a proper instruction from the court. Where there is no conflict in the evidence and only one conclusion could be reasonably reached on the question of liability under the facts, it then becomes a question of law for the determination of the court, and

presents a proper case for a directed verdict. While the bill of exceptions state that the facts as shown by the evidence of plaintiff were controverted by the evidence offered by the defendant, the bill of exceptions does not set out the evidence of the defendant or what particular facts shown by the evidence of plaintiff were controverted. We will therefore consider the facts as set out in the bill of exceptions as having been proved. We find this statement contained in the bill of exceptions, which seems to have been made by the court in disposing of the motion for a directed verdict: "The court stated that he found all facts in favor of plaintiff, but that in law the policy required actual confinement to bed, and in this case there was no such confinement on plaintiff's proof." The question now presented for the determination of this court on this appeal, is whether there was any evidence, or facts proven that would entitle the plaintiff to a recovery in this case, or that would entitle the plaintiff to have the question submitted to the jury, whether under the facts the plaintiff had been confined and was confined to his bed in the meaning of the provisions in the policy on the subject.

The defendant relies upon the failure of plaintiff to prove that he was necessarily confined to his bed so as to entitle him to a continuation of the payments of the weekly benefits, and that under the most favorable consideration of plaintiff's proof, and all reasonable inferences to be drawn therefrom, that plaintiff was not so confined to his bed as to entitle him to a continuation of the payments under any proper construction of the provision contained in the policy. The plaintiff contends that it is not necessary that the plaintiff be actually confined to his bed to entitle him to have the sick benefits paid him, and that his condition as shown by the evidence, while not actually and necessarily such as to necessitate his staying in bed all of the time, that it is such as that he is helpless, and totally disabled from doing any work, or from getting around and going out without assistance, and that this in legal contemplation is equivalent to a confinement in bed. In support of this contention numerous authorities are cited and relied upon by plaintiff, and especially the case of Life & Accident Ins. Co. v. Bradley, reported in 6 Higgins, page 566. It appears that this case was affirmed by the Supreme Court upon a certiorari from the Court of Civil Appeals, but the opinion of the Supreme Court affirming the opinion of the Court of Civil Appeals is not published. In that case, however, the provision in the policy there construed by the court was materially different. In the Bradley case the provision under consideration, and construed by the court, was as follows:

"Weekly benefits for sickness will only be paid for each period of seven consecutive days that the insured has by reason of illness necessarily been confined to bed and there visited professionally by a duly licensed and practicing physician, or has

by reason of illness necessarily been confined to his room and there visited by a duly licensed physician.''

The distinction in the two provisions of the two respective policies is, that in the present case there is no provision for the payment of sick benefits where the insured is confined to his room by reason of illness. Mr. Justice Higgins in his opinion in the case of Life & Accident Insurance Company v. Bradley, supra, does not take any note of the provision in the policy with reference to confinement in bed, but disposes of the case solely on that part of the provision for necessary confinement to the room. It is significant, therefore, that while the Bradley policy contained the same provision with reference to confinement in bed that is contained in the policy now under consideration, but in disposing of the case the Court of Civil Appeals, in applying the facts of that case to the provisions in the policy, only discussed the facts as bringing the case within that provision in the policy with reference to confinement to the house. It is also significant that the policy in the Bradley case was issued by the same company as in the instant case, and it also appears the policy in the Bradley case was issued prior to 1916, while the policy in the present case was issued in December, 1922. However, this becomes immaterial, since we are confined to a consideration of the provision contained in the policy sued on in this case. The facts in the Bradley case show that the plaintiff was undoubtedly sick, and that he was unable to follow his usual labor, and that because of his ailment, blindness, he was confined to his house, except brief absences under the necessity of an immediate return to his home. Because of his condition he was totally disabled from performing any labor, and his brief absences from home were occasional visits to his physician, or out of town, but was always accompanied by his wife; that he was unable to guide himself or to guard himself from injury and was dependant entirely upon his wife for assistance in such matters. It is stated in the opinion that Bradley testified ''that during the entire period of twenty weeks and the life of the policy he was totally blind, unable to perform any manual labor, and was confined to his house or room during the whole period except when he would go to visit his physician or out in town, but was always accompanied by his wife; that he was incapable of guiding or guarding himself and was dependent entirely upon his wife for assistance in such matters; and that he did not depart his house or room without her accompanying him, and then only to consult his physician, who resided in Bristol; that he was totally disabled from laboring. . . .''

We do not think that the case at bar presents any less facts that would constitute a confinement to the house than the Bradley case presents, and we are also of the opinion that the Bradley case is well supported by authority, and that case was affirmed by the Supreme Court. We are clearly of the opinion that the plaintiff Wilkes is,

in the sense of the law and the construction usually given, confined to his house, although he made frequent visits to the hospital, and to the offices of the defendant to collect his weekly benefits, and to the office of his attorney with reference to this case, but on all such trips and absences from his home he was either taken by some friend in an automobile or went on the street car and always attended by some person to assist him. The question as to what would constitute a confinement to the house has been before the courts in many cases, and with but few exceptions the courts have held that the provision contained in the policy of insurance did not contemplate a literal and continuous confinement to the house, and that such a provision in the policy should be given liberal construction in favor of the insured and against the insurer. (Insurance Company v. Hawes, 42 L. R. A. (N. S.), and note; Jennings v. Brotherhood, 44 Col., 18 L. R. A. (N. S.), 109; Benefit Ass'n v. Nancorrow, 18 Col. App., 274; Relief Fund v. Gross, 57 N. E., 145, Ind. App.)

A very full discussion of this question is contained in Briel v. Insurance Co., 23 L. R. A. (N. S.), 359, and the elaborate notes in that case: That was a Nebraska case, and in the first headnote it is said: "Within the meaning of an insurance contract for sick benefit, it cannot be said that an assured is not confined 'constantly to the house' during an illness characterized by recurring periods of severity, although at intervals he may occasionally step into his yard, or make visits to his physician or other short and unusual trips, the assured at all times being unable to resume the ordinary duties or pleasures of life."

In the case of Columbia Relief Fund Ass'n v. Gross, 25 Ind. App., 215, 57 N. E., 145, the court said: "But we cannot agree with counsel that the acts of appellee, as shown by the finding in going out of his house under the directions and advice of skillful and competent physicians, for the purpose named, was a violation of the conditions upon which he was to receive indemnity. Conceding such acts to be a violation of the strict letter of the contract, they were not a violation of the spirit and true intent and purpose of the contract." In that case the provision in the policy was for "necessary confinement to the house by reason of the illness." It was held in Mutual Ben. Ass'n v. Nancorrow, supra, that a provision in the contract, "confined to the house by illness," does not contemplate a constant restraint indoors, and the fact that insured makes visits to the physicians office, using the car line, would not defeat his recovery.

In Dulany v. Fidelity, etc., Co., 106 Md., 17, 66 Atl., 614, it is held: "And a provision for benefits when insured 'shall be necessarily confined to the house' means while he is confined to the porches as well as other parts of the house, where he is taking treatment for tuberculosis."

In nearly all of the cases we have examined on the subject it seems to be recognized that the primary purpose of the insured is to provide small weekly indemnity against illness or other disability which renders him incapable of performing work or earning anything during such physically inability. However, this is a subject for contract between the parties, and if it was the intention of the parties to the contract that the insured would receive weekly benefits from sickness or disability which rendered him incapable of performing labor, regardless of whether such disability confined him to his room or bed, then there would be no reason for writing that condition into the policy. It would be sufficient to simply say that the weekly benefits would be paid so long as the insured was on account of illness rendered incapable of performing his usual work or performing any labor from which he could earn wages. The condition in the policy under consideration is that before the insured can receive the weekly benefits provided in the policy he must be "necessarily confined to his bed" by the illness. This provision in the policy must be liberally construed in favor of the insured, it does not necessarily mean that the insured shall be actually confined to the bed in a literal sense. But it does mean that he is confined to his bed in a substantial way. We think that this provision in the policy must be given proper consideration, although it should be liberally construed in favor of the insured. The provision is certainly inserted in the policy as one of the conditions under which the insurer will pay the weekly indemnities specified. It is not sufficient that the insured is rendered physically unable to perform any labor and is physically incapable of earning wages, but to entitle the insured to the weekly benefits it must appear that his illness is of such a character as to confine him to his bed in a substantial way, not necessarily continuous, as for instance where he remains in bed the greater portion of the time but occasionally gets up and makes outside trips of short duration but promptly returns and goes to bed, and that his condition makes this necessary. Applying this rule of construction to the condition contained in section 2 of the policy, we must conclude under the facts as shown by the bill of exceptions, and the averments contained in the declaration that the plaintiff was not so confined to his bed after the defendant discontinued the payment of the weekly benefits. It is shown by the bill of exceptions, and is also averred in the declaration, and is urged by the plaintiff on this appeal, that the plaintiff is in sound and normal condition except the disability to his lower limbs. It is even urged by the plaintiff under the fifth assignment of error that the plaintiff being in sound and normal condition except the disability to his lower limbs, that he would be entitled to recover in this case the full value of the policy contract on the theory that being in normal and sound condition he would be entitled to recover for the full period of his life

46

expectancy, at least up to the maturity date of the policy. In this connection it is urged that with the exception of the paralysis of his legs he is otherwise in sound condition. It may be that because of the paralysed condition of the plaintiff's legs he was and still is confined to the house in a substantial sense, but this does not mean that he is or has been since the discontinuance of the payments of the weekly benefits confined to his bed.

We are of the opinion that by giving the plaintiff the benefit of a reasonable and liberal construction of the condition in the policy on the subject of "necessarily confined to the bed," the facts would not justify a holding that under the undisputed facts, and under the strongest insistence of plaintiff, and under the most favorable inferences that could be reasonably drawn in favor of plaintiff from these facts, that the plaintiff had been in a substantial sense confined to his bed since the defendant discontinued the payment of the weekly benefits, the latter part of February, 1925. We are also of the opinion that there was no error by the learned trial judge in directing the jury to return a verdict in favor of the defendant. The bill of exceptions in this case, while not setting out in detail the evidence of the witnesses, and does not set out any of the evidence of the defendant's witnesses, does not show a conflict as to the real facts as to the condition of the plaintiff at and prior to the trial. There being no conflict as to his real condition, it became a question of law, as to whether under these facts the defendant was liable to the plaintiff for a continuation of the payment of the weekly benefits.

It results that all assignments of error are overruled and the judgment of the lower court is affirmed. Plaintiff will pay the costs of this appeal.

Owen and Heiskell, JJ., concur.