## JOHN W. SULLIVAN v. SAM C. TIGERT.

Middle Section. November 7, 1925.

No petition for Certiorari was filed.

1. **Pleading. Res adjudicata must be specially pleaded.**
    Pleas of former adjudication are special pleas in bar, and must be specially pleaded in writing in courts of record, but need not be verified. See Shannon's Code, section 4626-7. Hence such pleas need not be in writing before justice of the peace.

2. **Payment. Payment defined.**
    A payment is a delivery of money or its equivalent in either specific property or services by one person from whom it is due to another person to whom it is due, which must be accepted as a payment with the intention of paying the debt or part of it.

3. **Payment. Payment distinguished from set off.**
    The distinction between payment and set-off is that a payment is by consent of the parties, expressed or implied, appropriated to the discharge of the debt, whereas, a set-off is an independent demand calling for its own action which the parties have not applied on the debt.

4. **Set-offs and counterclaim. Set-off may be used as a defense to action or may be saved and sued on in another action.**
    It is well settled that where the defendant has a matter of set-off or counterclaim, in the absence of a statute, he may plead it to the action or

may reserve it to be used as the basis of an independent action, but where the plaintiff in his action, allows a set-off as a credit and sues for the balance and recovers judgment, the judgment will be res adjudicata, if he allows the full value of the credit.

5. **Set-off and counterclaim. Set off cannot be split and part used as defense and part for basis of another suit.**

If a defendant having a single indivisible counterclaim set it up as a defense, as a set-off, and controverts the amount of the credit, and having been allowed the same or a part of the same as a credit, he cannot bring another suit to recover the balance of his claim as that would be res adjudicata.

6. **Judgments. Res adjudicata. Party claiming a credit and not obtaining full amount cannot later maintain action for balance.**

In an action to recover pay for hauling defendant's corn and hay where plaintiff had claimed credit for said money in a former suit against him, held where the defendant, in a former suit, has controverted the amount of a credit and denied that it was not enough, and has been allowed a credit, although not for as much as contended, he cannot later bring another suit to recover the balance of his claim, as that would be splitting up his cause of action or defense, to which the doctrine of res adjudicata applies.

7. **Appeal and error. Where party does not ask a peremptory instruction at the close of all the evidence appellate court cannot dismiss cause on plea of res adjudicata.**

In an action to recover pay for hauling defendant's grain where the defense was res adjudicata and the defendant asked for a peremptory instruction at the close of plaintiff's case but afterwards offered evidence and did not ask for peremptory instruction at close of all the evidence, held not entitled to have case dismissed by appellate court although plea was good.

8. **Trial. Instructions. Instruction based on assumed facts held erroneous.**

In an action to recover for hauling defendant's hay where it was a disputed fact as to whether defendant told plaintiff he would pay him, an instruction telling the jury that there was a promise to pay, held bad because based on assumed evidence or controverted evidence and invaded the province of the jury.

9. **Trial. Replication of nul tiel record makes issue for court.**

A replication of nul tiel record makes an issue that must be tried by the court. Nothing but an inspection of all the original record, if in the same court, or certified copy, if in a different court, is necessary to decide it.

10. **Costs. Surety on the prosecution bond not liable for costs of appeal in law cases.**

The surety for the prosecution of a suit at law, upon a bond given under Chapter 19, section 1 of the Act of 1787 is not liable for the costs beyond the judgment of the court in which the suit is instituted.

Appeal in Error from Circuit Court, Lincoln County; Hon. R. W. Smartt, Judge.

Reversed and remanded.

Lawson Myers and Bert E. Holman, both of Fayetteville, for plaintiff in error, Tigert.

W. L. Turley, of Fayetteville, for defendant in error, Sullivan.

CROWNOVER, J. This case is not styled correctly. It is here styled as it was in the court below. It should be styled Sam C.

Tigert, plaintiff in error, v. John W. Sullivan, defendant in error, as judgment was rendered against the defendant below and he has appealed to this court.

This was an action to recover $30 for hauling the defendant's corn and hay to Fayetteville, which was originally instituted before a justice of the peace of Lincoln county, and resulted in a judgment for the plaintiff. The case was appealed to the circuit court and there tried by a judge and a jury, which resulted in a judgment for $30 in favor of the plaintiff. The defendant's motion for a new trial was overruled and he has appealed in error to this court and has assigned errors.

It should be stated that the defendant, in the lower court, pleaded first, that he didn't owe said account; second, payment; third, estoppel; and fourth, a special written plea of former adjudication, in which it was averred that the matters herein sued on had been adjudicated in a former suit in the chancery court of Lincoln county between the same parties.

There was no written replication filed to the plea of former adjudication. A part of the record in the chancery case, that is, the bill, answer, and final decree, were introduced as evidence in this suit in the court below, but the testimony in the chancery suit was not introduced.

For some reason the trial judge instructed the jury not to consider the third and fourth pleas. The paragraph of his charge in this respect is as follows:

"You need not consider the question raised by the third and fourth pleas, that of estoppel, or the plea of res adjudicata, the court having reached the conclusion that the last plea is no good as a matter of law under the pleadings, and record in the chancery case, and no question of estoppel being involved in this case, unless in the matter of payment, or settlement of the account."

The defendant has assigned several errors in this court, but it is only necessary for us to consider two of them. The first assignment of error is,—that the court was in error in overruling the defendant's plea of res adjudicata. It being strenuously insisted that the account herein sued on had been formerly passed upon and settled in the chancery case; that the appellant, Tigert had sued the appellee, Sullivan, in the chancery court of Lincoln county on a $150 note for borrowed money and that he alleged in his bill that the defendant, Sullivan, owed him $150 note that had been credited with $12 difference in hauling the corn and hay, and that the matter had been set out and explained in that bill, in which, it was shown that the defendant, Sullivan, was a tenant on Tigert's farm and had agreed, to haul the hay and corn to a near-by town for the

purpose of selling it, but instead had hauled it and stored it in other barns near the farm, and later hauled it to Fayetteville and at the time told complainant, Tigert, that the difference in the hauling amounted to $12, for which he was given credit. It was further insisted that the defendant, Sullivan, had answered that bill and insisted that the credit of $12 did not cover the full cost of hauling the products to Fayetteville, that the $12 merely paid the hands, and did not include pay for the use of the wagons and teams; that complainant, Tigert, had agreed to extend the time of payment on the $150 note, and after denying other allegations of the bill, not necessary here to mention, he prayed to be hence dismissed with his reasonable cost. In other words, that complainant's suit be dismissed; that the case was heard by the chancellor, and a decree was rendered in favor of the complainant, Tigert, for the note less the $12 credit. Hence, it is insisted that the matters had been formerly adjudicated and that the plaintiff below, Sullivan, cannot divide up his cause of action or defense and be allowed a credit for one part on the note and then bring another suit for the services of his wagons and teams.

It is insisted by appellant that no written replication was filed to the plea of former adjudication and that, therefore, no issue was joined on said plea, and for this reason it will be assumed that the facts set up by that plea are admitted for want of denial; but we cannot assent to this proposition as a matter of law. While, it is well settled in this State that issue must be joined on a special plea of former adjudication (See, Caruthers History of a Law Suit 5 Ed., 198 and 230; Shannon's Code, sec. 4649), yet, where there are several pleas filed, and no issue is joined on one plea, it will be assumed by this court that the plea itself has been abandoned; or if it is the only plea and no issue is joined, and no action taken or invoked a judgment based upon it is not valid for the want of an issue. See, Teasdale v. Produce Co., 104 Tenn., 267; Railroad v. Wade, 1 Hig., 798; Carlock v. Chattanooga, 130 Tenn., 330.

However, we do not assent at all to the proposition that no issue was joined on the fourth plea of former adjudication, for the reason that all pleas, before justices of the peace or in any suits originated before them and carried into higher tribunals are ore tenus, except pleas which are required to be under oath. See Shannon's New Code, sec. 5969, Notes 4-6, citing numerous authorities.

Pleas of former adjudication or res adjudicata are special pleas in bar, and must be specially pleaded in writing in courts of record, but need not be verified. See Shannon's Code, section 4626-7, Note 2; Caruthers History of a Law Suit 5 Ed., 204-5, 230. Hence, they need not be in writing before a justice, and we must assume that the issues were properly joined ore tenus. It was not necessary that the plea, or replication thereto, be in writing or be sworn to as the case

originated before a justice of the peace. The trial judge, in his charge, sets out the pleas and then states the contentions of the parties with respect thereto. This, in connection with the evidence and other facts, shows that issue was joined, ore tenus, and that the parties so understood it. Therefore, the appellant is in a position to raise the question of res adjudicata here.

As stated before, the evidence submitted to the chancellor was not read to the jury in this case so far as the record shows, but the bill, answer and decree of the chancery suit were introduced in evidence and read to the jury, and the parties orally testified, without objection, all about what was submitted to the chancellor.

The testimony before the trial court shows that the controversy in the chancery suit was, in part, about the $150 note and the same account; that the hay and corn were stored in barns, and that the corn was later hauled to Fayetteville and sold to one Thornton, and that a part of the hay was later hauled to defendant Tigert's barn at Fayetteville, and by agreement the $150 note, sued on, was credited with $12, Tigert insisting that the $12 was the difference in hauling and that he gave him credit for all that he demanded, while Sullivan insisted that the $12 was for the cash paid to the hands and did not include pay for the use of the wagons and teams, and that he did not tell Tigert, at the time, how much he intended to charge for the wagons and teams. This was the controversy in the chancery proceeding about the matter. The chancellor decreed that Tigert recover on the $150 note less the credit of $12. Later this suit was instituted and the plea of former adjudication was insisted upon.

In the briefs and arguments the parties referred to the credit as a payment, and elsewhere it is referred to as a set-off.

A payment is a delivery of money or its equivalent in either specific property or services by one person from whom it is due to another person to whom it is due. In a legal sense there must be— (1) a delivery, (2) by the debtor, or his representative, (3) to the creditor or his representative, (4) of money or something accepted by the creditor as the equivalent thereof, (5) with the intention on the part of the debtor to pay the debt in whole or in part, and (6) accepted as payment by the creditor. In other words, there must be a delivery by the debtor to the creditor of money or its equivalent, which must be accepted as a payment with the intention of paying the debt or part of it. In other words, there must be an expressed or implied agreement between the parties that the payment should be made and accepted.

A set-off or cross-demand, no matter how clearly proved, does not constitute a payment. The distinction between payment and set-off is that a payment is by consent of the parties, expressed or

implied, appropriated to the discharge of the debt, whereas, a set-off is an independent demand calling for its own action which the parties have not applied on the debt. Payment, while a defense, is not a set-off which may be used or omitted at the pleasure of the defendant. The fact that the creditor received money of the debtor as his agent or otherwise does not constitute a payment unless the debtor consents to the application of the money. In other words, a creditor cannot. lawfully pay himself with the debtor's money without the debtor's consent expressed or implied. Matters of account, however, in favor of the maker of the note cannot be set-off against such note so as to constitute payment of same, in the absence of some agreement expressed or implied that they should be so applied. See 30 Cyc., 1180-1; 8 C. J., 578; 22 Amer. & Eng. Ency. of Law (2 Ed.), 576; McGill v. Ott, 78 Tenn., 147; Grissom v. Bank, 87 Tenn., 356.

The presumption ordinarily is that the transaction is not a payment, however, if the parties agreed that it shall be a payment, that controls. It is a matter. of intention. See 22 Amer. & Eng. Ency. of Law (2 Ed.), 576.

In other words, we think that when Sullivan did the work of hauling the corn and hay to Fayetteville, if entitled to recover, it would be a matter of set-off or counterclaim that could have been pleaded to the suit on the note, or he could have reserved it to be used as a basis of an independent action, but after he went to Tigert, and they, by agreement, credited the $12 on the note, then that became a payment pro tanto.

It is well settled that where the defendant has a matter of set-off or counterclaim, in the absence of a statute, he may plead it to the action or may reserve it to be used as the basis of an independent action, but where the plaintiff. in his action, allows a set-off as a credit and sues for the balance and recovers judgment, the judgment will be res adjudicata, if he allows the full value of the credit. See 22 Amer. & Eng. Ency. of Law (2 Ed.), 577; 24 Amer. & Eng. Ency. of Law (2 Ed.), 785.

But, if a defendant having a single indivisible counterclaim sets it up as a defense, as set-off, and controverts the amount of the credit, and having been allowed the same or a part of the same as a credit, he cannot bring another suit to recover the balance of his claim as that would be res adjudicata. In other words, he cannot split up his cause of action or defense where he has a single indivisible counterclaim. 24 Amer. & Eng. Ency. of Law, 789; 2 Black on Judgments, sec. 761 to 765; Boyd v. Anderson, 1 Overt., 440.

It has been held that a plaintiff cannot, in a suit against defendant, compel the latter to present or litigate his counterclaim by giving him credit for any items of such claim and by suing for the

balance where the defendant suffers judgment to go by default or confesses judgment. Where the plaintiff allows an off-set as a credit on the note sued on, and the defendant allows judgment to be entered by default or confesses judgment then the plaintiff's judgment is a bar only in the event the plaintiff has allowed the full value of the set-off, and this will not prevent defendant from sustaining a subsequent action for demands due him from the plaintiff that were not allowed by the latter in the first suit. See Freeman on Judgment (4 Ed.), Vol. 1, sec. 280.

However, we are of the opinion that the better rule is, that in such cases where the defendant, in a former suit, has controverted the amount of a credit and denied that it was not enough, and has been allowed a credit, although not for as much as contended, he cannot later bring another suit to recover the balance of his claim, as that would be splitting up his cause of action or defense, to which the doctrine of res adjudicata applies.

The proof in this case shows that the defendant, Sullivan, in the chancery suit, did not confess judgment nor let judgment be taken by default, but denied liability on the note, in that, he insisted that Tigert had agreed to extend the time of payment, and he not only denied that the $12 was the difference in the hauling, but insisted that the $12 was for the cash paid to the hands and did not include pay for the use of the wagons and teams.

Hence, the identical question was raised in that suit and decided against him, and we think, bars his right of action in this suit, as the whole matter was one transaction and an indivisible cause of action.

It results that the first assignment of error must be sustained; but the defendant below failed to make a motion for peremptory instructions at the close of all the evidence. The fact that during the progress of the trial he, in effect, moved the court for peremptory instructions and afterwards introduced evidence does not entitle him to have the suit dismissed in this court where he failed to renew his motion for a new trial at the close of all the evidence. See Railroad v. Henderson, 118 Tenn., 284; Coal Co. v. Bennett, 8 Hig., 210; John Gerber Co. v. Smith, 150 Tenn. 255.

There are several other assignments of error directed at certain paragraphs of the judge's charge, but we think it sufficient to consider only one of them.

It is insisted that the court erred in charging the jury as follows:

"As to the hay—the plaintiff insists that there was no contract between him and the defendant, Tigert, as to where the hay was to be delivered, and that when he harvested the hay, having no place to put the defendant's one-half, that he put it in the barn of one Mr. Hines, nearby, and that when he had

to take it out of Hines' barn he notified defendant, who told him to haul it to him at Fayetteville and he would pay him for it, and that he hauled it to Fayetteville and that it took six days with the team, and that $3.50 per day was reasonable. These are substantially as Mr. Sullivan insisted they were;'' whereas, it is insisted that the plaintiff did not testify that the defendant "told him to haul it to Fayetteville and he would pay him for it," and that this charge to the jury was prejudicial.

It is insisted that this was a judicial construction or interpretation of the plaintiff's testimony, and the determination by the court of a vital question, which was earnestly controverted before the jury. It is insisted that, while the defendant contended that the plaintiff had removed and stored his hay at another place, without consulting defendant, and had hauled it to Fayetteville for which he only charged $12, "difference in the hauling," and had been given credit on his note, the court, in stating the contention, assumed that the plaintiff had testified that the defendant had "told him to haul it to him at Fayetteville and he would pay him for it." It is insisted that the plaintiff did not so testify and this was misleading and most prejudicial to the defendant.

The plaintiff testified:—

"That there was no barn on the place and when the hay was bailed that witness stored all of it in Hines' barn just across the road from where it was bailed and that it stayed there till late fall, when Hines wanted that part of the barn and hay had to be moved and that plaintiff hauled his part over to his own barn about a mile away, and asked defendant what he wanted done with his half and that defendant said he wanted it hauled to his barn in town in Fayetteville, and he hauled him six loads at $3.50 per day, and it took him about a day to haul a load as he had to haul it about six miles and he charged $21 for hauling this hay."

"I stored all of it in Hines' barn and he afterwards got me to haul his part to him here in town. He never asked me what I was going to charge, but he knew I was not going to haul it for nothing."

We fail to find, upon examination of the evidence, any fact upon which the court based the instruction submitted. However, it is insisted that this was the natural conclusion to be drawn from the evidence and that the law would imply a promise to pay, in the absence of an express agreement. We do not think so, in view of the contentions, and in any event the judge invaded the province of the jury.

To instruct a jury upon assumed facts to which no evidence applied, or where the facts are controverted was error, as the court

invaded the province of the jury. In this instance it is not improbable that the jury was misled into the belief of the court that there was evidence of an express promise to pay for the hauling and accepted this in making up the verdict. See Railroad v. Satterwhite, 112 Tenn., 208, and authorities cited; James Co. v. Bank, 105 Tenn., 16; Jones v. Richardson, 99 Tenn., 614; Glass Co. v. Cannon, 5 Hig., 51, 61.

Hence, we think that this assignment should be sustained, as the court invaded the province of the jury.

The other assignments become immaterial, and it results that the judgment of the lower court must be reversed and the cause remanded for a new trial. The cost of the appeal is adjudged against defendant in error, Sullivan, for which execution may issue. The cost of the cause will await the final termination of the case.

## OPINION ON PETITION TO RE-HEAR.

CROWNOVER, J. On a previous day of this term, November 7, 1925, an opinion was rendered by this court in this case. The plaintiff in error, Sam C. Tigert, upon application was granted five days additional time in which to file a petition to re-hear, and on November 21, 1925, he filed a petition for a rehearing of the case on two grounds; (1) he insists that under the plea of former adjudication the action should have been dismissed in our court and not remanded for a new trial, and (2) he insists that the court erred in not adjudicating the cost of the cause against the surety on the prosecution bond, or at least that the cost of the appeal should have also been adjudged against the surety on said prosecution bond.

After an examination of the authorities, we are satisfied that our former opinion was correct.

On the first proposition he insists that under his plea of former adjudication, the only replication that could have been filed was nul tiel record, and that upon his production and proof of the record in the cause formerly tried in the chancery court, then it was the duty of the trial judge to have passed upon that proposition and to have immediately dismissed the action.

In reply to this contention, we will say that when a party files a plea of former adjudication the plaintiff has a right to file a replication of nul tiel record or he may reply that the former judgment or decree is not the same cause of action. In event that he files a replication of nul tiel record which makes no averment of extrinsic facts, that issue must be tried by the court. Nothing but an inspection of all the original record, if in the same court, or certified copy, if in a different court, is necessary to decide it. But if the plaintiff's replication is that it is not the same cause of action then that issue should be tried by the jury, because the plaintiff must necessarily

depend upon extrinsic proof to show that it is not the same cause of action. See Caruthers' History of the Law Suit (5 Ed.), 230; Coulter v. Davis, 13 Lea, 451; Smithson's Civil Procedure, pp. 535 to 551.

Now in the instant case, the suit having originated before a justice of the peace, the plea of former adjudication and the replication thereto need not be in writing, and the only way that we can tell what replication the plaintiff tendered is by an examination of the whole record, and we must assume that the proper replication was tendered. In the chancery proceedings other issues were principally involved, and the credit of $12 allowed on the note was merely an incident. It took extrinsic oral testimony to explain the former decree and also to establish the necessary proof in this case, therefore, we may well assume that the replication was that they were not the same cause of action.

"When a former judgment is set up as a bar or estoppel, the question whether there is such an identity of the parties and of the subject-matter or cause of action as will support the plea of res adjudicata is a question of law for the court when it is determinable from an inspection of the record alone, but if extrinsic evidence is required to effect the necessary identification, it becomes a question of fact and must go to the jury, unless the proof admits of only one conclusion. In either case, when this point is established, or if it is not disputed, it is for the court to decide and declare the effect which shall be given to the former judgment as evidence in the pending action or as a bar to its maintenance." See 34 C. J. 1079-1080.

However, whether we assume that plaintiff's replication was nul tiel record or that it was the same cause of action, the result will be the same. The case was tried by a jury, and if the plaintiff's replication had been nul tiel record, and if the trial judge had upon inspection of the record decided that this action was about the same subject-matter of the former suit, that the former suit was for the same object and purpose, that the same issues were joined, and that the former adjudication was upon the very point directly in issue by the pleadings in this case, then the result would have been the same. It would have been the duty of the court to have passed upon the replication of nul tiel record, and to have instructed the jury to this effect and to have directed a verdict in this action. He had the jury and it was his duty to instruct them to return a verdict for the defendant, and if he did not do so, then it was the duty of the defendant to have moved the court for a directed verdict. This was not done and we see no reason to change our former opinion on this proposition.

"Although it may be left to the jury to find whether a former judgment set up as an estoppel was between the same parties and involved a determination of the same point or question presently in issue, when extrinsic evidence on this question has been heard, the court should at the same time instruct them as to the effect to be given to the former judgment if they find to be in point." See 34 C. J., 1080, sec. 1524.

The other question raised by the petition for a rehearing is that the court erred in not taxing the cost of the appeal against R. W. Gaunt, surety on the prosecution bond. After a re-examination of the authorities we are satisfied that our former opinion is correct.

It has been established in many cases decided by our Supreme Court and by this court, that the surety on the prosecution bond is not liable for the costs of the appeal in a law case, although the rule is otherwise in the chancery court. On appeal chancery causes are tried de novo in the appellate court, whereas law cases are tried on writ of error, and the surety for the prosecution of a suit at law, upon a bond given under chapter 19, section 1 of the Act of 1787, (Shannon's Code, Sect. 4923) is not liable for the costs beyond the judgment of the court in which the suit is instituted. See cases collated in Michie's Tenn. Ency., Dig., Vol. 3, pp. 826-827.

It results that the petition to rehear must be denied.

Faw, P. J., and DeWitt, J., concur.